IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| THOMAS RUSSELL GIBSON | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:10cv136 |
| DAVID LANGSTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Thomas Gibson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. 636(c). The named Defendants in the case are Michael Unit dentist Dr. David Langston, Warden John Rupert, and Dr. Owen Murray, President of the University of Texas Medical Branch, Correctional Managed Care division. Warden Rupert has previously been dismissed from the case.

An evidentiary hearing was conducted on July 8, 2010. At this hearing, Gibson testified that during an earlier period of incarceration with TDCJ, in 1990, he agreed to have all of his teeth removed upon a promise that he would be given dentures every five years. He was later released on parole, but returned to TDCJ some time late in 2004. When he returned to TDCJ, he did not have his dentures with him, and has been unable to obtain them.

After his return to TDCJ, Gibson said, he learned that the policy had changed, and that TDCJ was no longer providing dentures. He says that he has difficulty chewing and that as a result, he has problems with constipation, flatulence, and receding and bleeding gums. Gibson said that he had to eat quickly and that he has been told that the unit does not give out "slow eating passes." He conceded that there were "blended diet" passes and that he has been offered such a pass, so that he will be provided blended flood which does not require as much chewing, but that he has declined.

1

Gibson said that he is five feet nine inches tall and weighs 227 pounds. The Court noted at the hearing that Gibson's body mass index is probably too high for him to have dentures under TDCJ policy, and Gibson said yes, but that he still suffers from flatulence and stomachaches, and that he is on medicine for indigestion and constipation. He stated that he believed that these conditions arose from having to swallow large chunks of food that he was unable to chew.

In discussing the defendants whom he sued, Gibson stated that Dr. Langston is the dentist at the unit. He said that Dr. Langston never offered him a slow eating pass and that other doctors at the unit told him that they do not do that. Owen Murray is the President of the University of Texas Medical Branch, Correctional Managed Care division, and Warden Rupert, the senior warden of the Michael Unit, is in charge of the grievance process at the unit. Gibson conceded that Rupert had not actually signed the grievance denying his claims – in fact, it was signed by a nurse named Tara Patton – but that Warden Rupert was in charge of the grievance process.

After Warden Rupert was dismissed, Dr. Langston and Dr. Murray were ordered to answer the lawsuit. On November 2, 2010, the Defendants filed their motion for summary judgment. Gibson has filed two sets of responses to the motion.

In their motion for summary judgment, the Defendants argue that they are entitled to qualified and Eleventh Amendment immunity, there was no deliberate indifference, their actions were objectively reasonable, and the denture policy is not unconstitutional. They attach summary judgment evidence including an affidavit from Dr. Billy Horton, the Dental Director for the University of Texas Medical Branch, the dental policy at issue, Gibson's grievance records, and Gibson's medical records.

Dr. Horton's affidavit says that Gibson could not have had an agreement for dentures with the University of Texas Medical Branch in 1990, because UTMB did not start providing medical or dental care for prison inmates until 1994. He says that under the dental policy, dentures are provided when the health of the patient would otherwise be adversely affected, a determination of which would include the tracking of weight trends and body mass index (BMI) levels. Specifically, the

policy provides that dental prosthodontics are provided "when medically necessary," and that dentists should monitor the nutritional status of patients by tracking weight trends for those who may have compromised masticatory functions. A review of the BMI may be used as a tracking methodology. A BMI of 18.5 to 25 is normal, but patients with a BMI of 25 or lower which is trending downward or a patient who is 10 percent or more underweight relative to ideal body weight should be referred to the treating physician for consultation. If the physician determines that the patient's nutritional status is compromised, special diets such as a blended diet may be considered. Dental prostheses for patients with compromised masticatory functions may be considered after initiation and follow-up evaluation of the effectiveness of the special diet.

In Gibson's case, Dr. Horton says, he was originally seen on December 8, 2004, weighing 190 pounds with a BMI of 28. On December 13, 2006, he weighed 226 pounds with a BMI of 33, and on September 23, 2010 he weighed 215 pounds with a BMI of 32. Based on these facts, Dr. Horton says that there is no evidence of a medical necessity for the provision of dentures to Gibson.

Gibson's grievance records show that on July 29, 2009, he requested dentures in a Step One grievance, saying that he has trouble chewing and his gums are receding. The response was that dentures are provided when medically necessary and that even though Gibson has compromised masticatory function, his BMI - which was described as the prime factor in determining eligibility - is above normal and his weight has been stable. If Gibson wanted a blended diet, the grievance response said, he could put in an I-60 inmate request form.

This grievance was filed after a visit to the dentist on July 27, at which time he was told that he was not eligible for dentures under the policy. His weight at that time was 222 pounds. In his Step Two appeal of the grievance, Gibson complains that he has poor digestion because he cannot chew and that a liquid diet is only a temporary solution and thus not acceptable in the long term. The response was that there is no documented medical necessity for dentures. The Step Two response noted that the statement in the Step One response that the BMI was the primary factor is in error because the primary factor is the lack of medical necessity.

In their motion for summary judgment, the Defendants argue that there was no evidence of deliberate indifference because Dr. Langston was acting in accordance with policy when he advised Gibson that there was no medical necessity for dentures. They note that Gibson's BMI was above the normal range and that Gibson has acknowledged that he was offered a blended diet, which he declined. They state that Gibson is simply disagreeing with Dr. Langston's assessment that there is no medical necessity for dentures. Finally, the Defendants state that Gibson's contention that the policy is unconstitutional is wholly conclusory and that he does not show that the dental policy violated his constitutional rights.

Gibson's first response to the Defendants' motion for summary judgment argues that this motion is untimely and that he has not been provided with unspecified disclosure materials which he says are essential to his claim.

In his second response, Gibson argues that there are material facts in dispute. Specifically, he says that the Defendants claim that he did not advise them of his medical needs, and so they were unaware of them, while he says that the Defendants had actual notice of the existence of his dental problem and the seriousness and pain of these problems. In addition, he says, the Defendants have had six years in which to follow up on his complaints. Gibson expressly abandons any claim which he may have for monetary damages, saying that all he wants out of the lawsuit is proper fitting dentures.

Legal Standards and Analysis

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

4

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient

5

evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

Application of the Standards to the Present Case

The competent summary judgment evidence in the case shows that Gibson expressed his need for dentures to the medical department, but these were denied to him because he did not meet the criteria for dentures pursuant to the policy. Specifically, Dr. Langston concluded that Gibson did not have a "medical necessity" so as to require dentures. Gibson expresses disagreement with this conclusion, arguing that he did in fact have such a need; however, he does not dispute the summary judgment evidence showing no evidence of weight loss and that his body mass index was in fact above the normal limit.

In Gober v. Olivarez, civil action no. G-07-0044, 2009 WL 2242353 (S.D.Tex., July 23, 2009, no appeal taken), the plaintiff Lester Gober complained that he had been denied dentures. He stated that he had lost 18 pounds in two years and that he suffered physically and mentally from the lack of teeth. In a Step Two grievance, he complained that his gums were shrinking and said that he should not be denied dentures based on monetary reasons.

After motions for summary judgment were filed, the U.S. District Court for the Southern District of Texas noted that the dental policies provided for dentures only when medically necessary as determined by weight, body mass, and nutritional status. Gober's medical records showed no

medical necessity for dentures despite evaluations by medical and dental personnel, and so the district court granted summary judgment for the defendants.

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). In addition, it should be noted that when an inmate alleges a serious medical need either for treatment or to avoid certain conditions, the inmate's bare assertion of a serious medical condition is insufficient without medical evidence verifying that the condition exists. Aswegan v. Henry, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion).

In this case, Gibson simply disagrees with Dr. Langston that a medical necessity for dentures exists. Neither this disagreement nor Gibson's personal belief that he has a medical necessity for dentures is sufficient to show a constitutional violation. While Gibson argues that disputed issues of fact exist, the material facts are undisputed; he was seen by the dental department and evaluated under the prevailing criteria, and Dr. Langston determined that under these criteria, no medical necessity existed for the provision of dentures. Gibson has not shown that this decision amounted to deliberate indifference to his serious medical needs. Dr. Langston's request for summary judgment should be granted.

Gibson also appears to argue that the policy itself is unconstitutional, suing Dr. Owen Murray as policy-maker. No court has yet held this policy to be unconstitutional; on the contrary, the Southern District has concluded that the policy is not unconstitutional, nor is the policy so deficient that it acts as a deprivation of constitutional rights. Huffman v. Linthicum, civil action no. H-06-0308, 2009 WL 243000 (S.D.Tex., January 29, 2009) (opinion after remand, no appeal taken); *see also* Foxworth v. Khoshdel, civil action no. H-07-3944, 2009 WL 3255270 (S.D.Tex., September

28, 2009, no appeal taken). This Court agrees with the determination of the Southern District and concludes that the TDCJ denture policy is not unconstitutional.

While the Defendants claim qualified and Eleventh Amendment immunity, such claims are pretermitted by Gibson's withdrawal of his requests for monetary damages. *See* Williams v. Ballard, 466 F.3d 330, 334 (5th Cir. 2006) (qualified immunity does not protect officials from injunctive relief). In order to obtain injunctive relief from the state or state officials acting in their official capacities, a plaintiff must prove a deprivation of his constitutional rights pursuant to an official state policy. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985); Grandstaff v. City of Borger, 767 F.2d 161, 169 (5th Cir. 1985). In this case, Gibson has not shown a deprivation of his constitutional rights done pursuant to an official state policy; rather, he has shown only that he disagrees with Dr. Langston's determination that he did not have a medical necessity for dentures. This is not sufficient to show entitlement to injunctive relief. The Defendants' motion for summary judgment is meritorious and should be granted.

## Conclusion

The Court has carefully reviewed the Defendants' motion for summary judgment and the Plaintiff's responses thereto, as well as the competent summary judgment evidence and all of the pleadings and testimony in the case. Upon such review, the Court has concluded that there is no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 32) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **6** day of **January, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE